STATE OF MISSOURI EX REL. MYRTLE BURTRUM, MAGGIE BARLOW and C. R. BARLOW, Relators, v. EMORY E. SMITH, Judge of the Circuit Court of the 24th Judicial Circuit of the State of Missouri. —No. 40473.—206 S. W. (2d) 558.

Court en Banc, December 8, 1947.

*R. A. Mooneyham* for relators.

*Wayne V. Slankard* and *Ruark & Ruark* for respondent.

136

[559] ELLISON, J.—This is an original proceeding in prohibition filed in this court last May by relators Mrs. Myrtle Burtrum and her parents, Mr. and Mrs. C. R. Barlow, and directed to the respondent, Hon. Emory E. Smith, Judge of the circuit court of Newton County. Consolidated for hearing with it is a citation for alleged contempt of this court in the prohibition case, issued by us in June on the complaint of Myrtle Burtrum and directed to Joe Burtrum (divorced husband of Myrtle Burtrum) and his second wife, Norma Burtrum. Both cases arise out of the same general set of facts, and are submitted on the pleadings. The cause was argued here last October.

The prohibition case challenges Judge Smith's jurisdiction to proceed in a habeas corpus case filed in his court last April by the said Joe Burtrum against his divorced wife Myrtle (and her said parents). In that habeas corpus proceeding he sought to obtain custody of Ronald R. Burtrum, the seven year old child of the divorced couple. She contends Judge Smith cannot adjudicate the custody of the child in the habeas corpus case because that issue was decided in 1945 by the Jackson County circuit court in her divorce case, which is now pending on appeal in the Kansas City Court of Appeals. In the latter case Myrtle Burtrum, as plaintiff, was awarded a decree of divorce from Joe Burtrum, $6000 alimony, [560] and care and custody of the minor child Ronald during the months of September to May, inclusive, of each year, Joe Burtrum to have such care and custody during the months of June, July and August.

Myrtle Burtrum appealed to this court from all of the decree except the part granting the divorce, and gave a supersedeas bond. But we transferred the cause to the Kansas City Court of Appeals in June, 1946, for want of appellate jurisdiction here, and the appeal was pending there at the time of the events upon which the instant habeas corpus and contempt proceedings are based. None of these events occurred during the three summer months when Joe Burtrum rightfully would have care and custody of the child under the circuit court's divorce decree. And Judge Smith's counsel do not contend he was ignorant of the divorce decree and the pendency of the appeal therefrom, when he assumed jurisdiction of the habeas corpus proceeding and took certain steps therein, though he alleges

he has done nothing in that case since the instant prohibition proceeding was filed. Counsels' position on that point is that Judge Smith had jurisdiction of the habeas corpus proceeding notwithstanding the pendency of the divorce case, for reasons presently to be stated.

As to the contempt proceeding. The written complaint of Myrtle Burtrum therein was filed here on June 6. It alleged that on May 21, five days after her petition for prohibition had been filed and our preliminary writ in prohibition had been issued on May 16, the said Joe Burtrum and his second wife, Norma Burtrum, with full knowledge of those facts, nevertheless conspired to entice the minor child Ronald Burtrum from the home and custody of his mother, Myrtle Burtrum, in violation of Sec. 4416, R. S. 1939-Mo. R. S. A.; and four days later, on May 25, feloniously assaulted her and took the child from her custody and possession by force—all of which is alleged to be in contempt of this court.

Our records do show that Myrtle Burtrum's petition in prohibition was filed here on May 16, but our preliminary writ was not issued until July 7, the same day our citation for contempt was issued. However, our records further show that when the petition in prohibition was filed on May 16 our clerk sent the usual telegraphic stop order to Judge Smith, notifying him thereof. And Myrtle Burtrum's petition in prohibition shows that two days earlier, on May 14, she gave written notice to Judge Smith of her intention to file it. Service of the notice was acknowledged by his counsel the same day.

These two days, May 14 and May 16, of course antedated May 21 and May 25, when Joe and Norma Burtrum allegedly contemned this court. But there is no showing that they had theretofore been formally or directly notified of the filing of the prohibition proceeding here on May 16. On the contrary the record shows they were not so notified until our preliminary writ in prohibition was served on them on July 10, some seven weeks after the alleged contempt. However, it is true that Judge Smith's counsel, who on May 14 acknowledged service for him of Myrtle Burtrum's notice of intention to file the prohibition proceeding, also represented Joe Burtrum in the habeas corpus proceeding, and furthermore represented Joe and Norma Burtrum in Myrtle Burtrum's contempt proceeding. She notified them on June 4 of her intention to file it two days beforehand; and they acknowledged service as such counsel, and wired this court requesting an extension of time to plead.

### The Prohibition Proceeding.

The issues are clear cut in the prohibition proceeding. The petition of the relators therein alleges that in Joe Burtrum's underlying habeas corpus proceeding in Judge Smith's court they chal-

lenged the jurisdiction of that court by a written motion to dismiss on the grounds stated in the beginning, and in support thereof exhibited a copy of the circuit court's divorce decree; the appeal therefrom; and a certificate showing the pendency of the appeal in the Kansas City Court of Appeals. The petition further alleges Judge Smith overruled their motion to dismiss, and was about to hear evidence in the habeas corpus proceeding when, on relators' application, he granted a continuance to May 19, after which they filed their petition for prohibition here on May 16.

[561] Judge Smith has filed a motion to quash our preliminary writ in prohibition on the ground that relators' petition therefor failed to state facts upon which relief could be granted, and also filed a return. The return substantially accords with the foregoing recitals, except that he maintains Joe Burtrum's petition for habeas corpus stated a prima facie case. Next he alleges that until he received our stop order in the prohibition case it was his intention and purpose to continue his inquiry in the habeas corpus case. Then he avers as matters of law:

(1) that his circuit court has general jurisdiction of habeas corpus proceedings involving the custody of infant children; (2) that he had the power to ascertain and determine in the first instance whether he had jurisdiction of the particular case; (3) that if he (either rightfully or erroneously) determined he had such jurisdiction, then he had the further power to make and enter such orders as to him judicially seemed proper; (4) that included within the scope of his said powers was a determination of the question whether Myrtle Burtrum or Joe Burtrum had the care and custody of their minor child Ronald Burtrum when Myrtle Burtrum instituted her divorce suit in the Jackson County circuit court [citing Sec. 1526, R. S. 1939-Mo. R. S. A.] ; (5) that notwithstanding the pendency of the appeal in the divorce case in the Kansas City Court of Appeals, he [Judge Smith] had the power to act in the habeas corpus case, if an emergency existed threatening injury to the child's health or morals.

Relators' reply to Judge Smith's return in the prohibition proceeding brings in no new facts, except a photostatic copy of a letter written by Joe Burtrum to Myrtle Burtrum on May 25, the date of his alleged assault upon her and forcible seizure of the child. The letter stated among other things that he had the child, and that they were very happy to be together "as the Judge said we should be thru the summer." Relators' reply alleges this letter contradicts the statement in Judge Smith's return that he had refrained from doing anything in the habeas corpus case after the receipt of our telegraphic stop order of May 16. We understand relators to mean Judge Smith was the judge referred to in the letter, and that *after* May 16 he had said therein that the child and Joe Burtrum

should be happy through the summer. But we attach no importance to this. Joe Burtrum had a right to the custody of the child during the summer months under the divorce decree, and furthermore the letter may have been intended to refer to some statement made by the judge who rendered that decree—and not to Judge Smith. Otherwise, relators' reply tenders only two legal issues—that the return states no facts justifying a denial of a rule absolute in prohibition; and that the petition in the habeas corpus case failed to state a prima facie case.

■ This last point is the basis for relators' first assignment of error, namely: that Joe Burtrum's petition for habeas corpus conferred no jurisdiction on Judge Smith because it failed to state facts upon which relief could be granted, in violation of Sec. 1591, R. S. 1939-Mo. R. S. A. 'That statute requires such petitions to "state in substance . . . all the facts concerning the . . . restraint, and the true cause thereof, to the best of the knowledge and belief of the party; : . . and, if the imprisonment be alleged to be illegal, the petition must also state in what the illegality consists."

It is true the petition under review here stated practically nothing but legal conclusions. It alleged that the petitioner's seven year old son Ronald "is illegally restrained of his liberty" by the respondents; and that the child "is not detained for any criminal or supposed criminal matter, but on the pretense that (the respondents) have the lawful custody of such child." Not a single *fact* is stated as to the cause of the child's detention by his mother and maternal grandparents, or showing wherein the detention was unlawful, unless the single adverb "illegally" can be treated as stating "facts".

A writ was denied by this court when sought on a petition less enigmatic, in Ex parte Joseph Roberts, 166 Mo. 207, 65 S. W. 726; and after issuance a writ was quashed by this court on certiorari, because based on an insufficient petition (far less objectionable than this one), in State ex rel. Walker v. Dobson, 135 Mo. 1, 7, 36 S. W. 238, 239. But these decisions have not [562] been closely followed in recent years, because the petition for a writ of habeas corpus is merely a preliminary pleading. When the writ is issued the petition has accomplished its purpose, and ordinarily thereafter the issues are based on the return to the writ, and the transverse thereof. State ex rel. Chase v. Calvird, 324 Mo. 429, 434-5, 24 S. W. (2d) 111, 114.

In this instance the relators here, when they were respondents below in the habeas corpus case, did file a motion to dismiss alleging voluminous facts, which was equivalent to a return challenging the court's jurisdiction. And in addition to that, it has been held that where a court has general jurisdiction of the subject matter and parties (as Judge Smith's court did have in the habeas corpus case) prohibition will not lie to oust that jurisdiction merely because the

petition fails to state a good cause of action in the particular case—if it can be amended to state one.[1] In view of the foregoing decisions, this first assignment made by relators may be without merit, but we pass it without ruling it finally, and turn to their second assignment of error.

■ That assignment maintains Judge Smith had no jurisdiction of the *particular* habeas corpus proceeding under scrutiny here, be-cause the Kansas City Court of Appeals had previously acquired ex-clusive jurisdiction of the issue on the custody of the minor child Ronald Burtrum, in his parents' divorce case. The contention is sound and must be sustained. The rule is not uniform in all the states. In some the doctrine is based on comity rather than conflict-ing jurisdictions.[2] But in this state it is founded in our statutes.[3] Our decisions hold that when such an issue is involved in a divorce case in a given court, that court has and retains exclusive jurisdic-tion [save in juvenile court cases], although a different court other-wise could adjudicate the same issue by habeas corpus under Sec. 1659, R. S. 1939-Mo. R. S. A.[4] And any other court so attempting to interfere exceeds its jurisdiction in the particular case, and is amenable to prohibition although it may have general jurisdiction of the subject matter and parties.[5] It is undisputed here that the divorce case is pending in the Kansas City Court of Appeals, as alleged, Therefore, it is and was a question of law whether Judge Smith could exercise his jurisdiction in the habeas corpus case on the same issue [custody of the minor child] that is involved in the divorce case.

Judge Smith's counsel makes two other contentions. They urge, first, that his court may properly ascertain in the habeas corpus case

[1]State ex rel. Leake v. Harris, 334 Mo. 713, 719(4), 67 S. W. (2d) 981, 982; Am. Const. Fire Assur. Co. v. O'Malley, 342 Mo. 139, 151 (6), 113 S. W. (2d) 795, 802(13).
[2]Divorce, 19 C. J., sec. 789, p. 341; 27 C. J. S., sec. 303, p. 1163; 17 Am. Jur., sec. 674, p. 512; sec. 678, p. 514; sec. 687, p. 520; Habeas Corpus, 29 C. J., sec. 112, p. 116; 39 C. J. S., sec. 53, p. 596; 25 Am. Jur., sec. 108, p. 223.
[3]Sec's. 1519, 1526, 1528, R. S. 1939-Mo. R. S. A.; 146 A. L. R. Note, pp. 1155, 1157, 1164.
[4]In re Gladys Morgan, 117 Mo. 249, 256, 21 S. W. 1122, 22 S. W. 913; Ex parte Sangster, 295 Mo. 49, 60(2), 244 S. W. 920, 923(1); State ex rel. Dew v. Trimble, 306 Mo. 657, 663, 269 S. W. 617, 619; Meredith v. Krauthoff, 191 Mo. App. 144, 165(1), 177 S. W. 1112, 1118(1); Bell v. Catholic Charities (Mo. App.), 170 S. W. (2d) 697, 700(6, 7); Edwards v. Engledorf (Mo. App.), 180 S. W. (2d) 603.
[5]50 C. J., sec. 3, p. 654, sec. 20, pp, 663-7, secs. 21, 22, p. 667; 42 Am. Jur. sec. 18, p. 156, sec. 24, p. 161, sec. 26, p. 163; State ex rel. K. C. Pub. Serv. Co. v. Waltner, 350 Mo. 1021, 1032(1), 169. S. W. (2d) 697, 701 (3, 4); State ex rel. Schoenfelder v. Owen, 347 Mo. 1131, 1139(2), 152 S. W. (2d) 60, 64(2); State ex rel. Nat. Ref. Co. v. Seehorn, 344 Mo. 547, 558(6), 127 S. W. (2d) 418, 425(13); Dahlberg v. Fisse, 328 Mo. 213, 223(11), 40 S. W. (2d) 606, 610(11).

whether Joe Burtrum had custody of the minor child when his wife instituted the divorce suit, citing Sec. 1526, R. S. 1939; Mo. R. S. A., and State v. Huhn, 346 Mo. 695, 699(1), 142 S. W. (2d) 1064, 1066(1). We do not agree. That decision merely construed the cited statute as meaning that if a married couple are living apart, the parent who has custody of the [563] unmarried minor children when a suit to adjudicate their custody is instituted, shall retain it exclusively during the pendency of the suit. It did *not* hold the issue of custody could be determined in habeas corpus while it was involved in a pending divorce suit previously brought. Furthermore, the circuit court here had finally adjudicated that issue and the plaintiff Myrtle Burtrum had appealed, giving a supersedeas bond which preserved the status quo pending the appeal. State ex rel. Gray v. Hennings, 194 Mo. App. 545(1), 185 S. W. 1153(1); State ex rel. Keith v. Wright, 230 Mo. App. 555, 560, 93 S. W. (2d) 1091, 1093.

If ad interim orders respecting the custody of the child can be sought pending the appeal, the petition must be addressed either to the circuit court which rendered the divorce decree, or to the proper Court of Appeals. It is held under Sec. 1519, R. S. 1939-Mo. R. S. A., that the *trial* court may allow alimony pendente lite, even after a final divorce decree and appeal. Jones v. Jones (Mo. App.), 164 S. W. (2d) 162(1); State ex rel. Clarkson v. St. L. Ct. Apps., 88 Mo. 135, 138. And the same statute grants the right to adjudicate the custody of minor children. See the Morgan case, supra,[4] and Annotations: 163 A. L. R., pp. 1319, 1321, 1326; 82 A. L. R., p. 1147. We are not deciding whether the circuit or appellate court has the power; and make the above citations only to show that no third court can interfere by habeas corpus against either.

The last contention of Judge Smith's counsel is that where an emergency exists, and a change in the custody of a child is necessary to protect its health or morals, a court may intervene by habeas corpus, notwithstanding its custody is pending adjudication in a divorce suit in another court. The only Missouri case cited is In re Delano, 37 Mo. App. 185, 187, where the above facts were hypothetically treated as creating an exception to the general rule. And that exception is stated in the text of 39 C. J. S., sec. 41a, p. 571, citing the Delano case. But the exception was not allowed in the Delano case, itself, nor was it in the only two subsequent decisions citing that case. In re Myrtle Kohl, 82 Mo. App. 442, 446 and Libbe v. Libbe, 157 Mo. App. 610, 614, 138 S. W. 688, 689. See also the Bell case, supra, marginal note 4. The impracticability of trying part of the issues in a divorce case in one court and part in another is obvious. It would be an excess of jurisdiction to do it, and should be restrained by prohibition. We hold our rule absolute, or peremptory writ should issue. And it may be added in this connection that

Joe Burtrum's petition for habeas corpus below made no contention whatever that any emergency existed, or that the health or morals of the minor child Ronald Burtrum were endangered.

■ The only question in our minds on the instant prohibition proceeding concerns the taxing of costs. It has been held in three decisions[6] that the costs in such proceedings should not be taxed against the respondent judge, notwithstanding a peremptory writ be issued against him. And this obviously is correct. But in the first two of these decisions the costs were taxed against the relator although he prevailed. This was done on the following theory, as explained in the third (Kurn) case. Since the costs cannot be taxed against the judge; and since the private parties to the underlying cause who profited by the judge's erroneous ruling, cannot properly be joined as respondents in the prohibition proceeding with the judge [because prohibition lies only to restrain judicial action]; therefore no one is left against whom the costs can be taxed except the relator, notwithstanding he won and his adversary litigants below [represented by the judge] lost, and despite the fact that they actually were the only real parties in interest, the judge's interest being only official.

There was no injustice in the ruling in the Kurn case, because there the same litigants were successful in both the prohibition proceeding and the cause below. [564] But on reflection we think the foregoing doctrine is often unjust and incorrect when the relator prevails. It is a matter of common knowledge that the respondent judge in such proceedings is represented by counsel for the litigant below who benefited by his rulings and seeks to sustain them. In one Missouri decision the costs were taxed against the instigating litigant below, when the favorable ruling of the respondent trial judge was overturned by prohibition. State ex rel. Ramsey v. Green (Mo. App.), 17 S. W. (2d) 629, 636(7). And that decision is cited as authority on the question by the text in 50 C. J., sec. 141, p. 712. Also it is stated in 14 Am. Jur., sec. 29, p. 19, that "a party for whose use or benefit a suit is brought or a real party in interest who brings suit for his own use in the name of another may, if he fails to recover, be charged with the costs of the action."

The same should be true when the party actually and exclusively interested *defends* in the name of a judicial officer who is not liable for the costs. We follow that practice in special proceedings other than prohibition. In a number of states the litigant behind the judge responding in a prohibition may be taxed with the costs, or even with damages and attorney fees, in the discretion of the court by statute

---

[6]State ex rel. Heddens v. Rusk, 236 Mo. 201, 218(6), 139 S. W. 199, 204(5); State ex rel. Fed. Lead Co. v. Reynolds, 245 Mo. 698, 706(7), 151 S. W. 85, 87(4); State ex rel. Kurn v. Wright et al., 349 Mo. 1182(1), 164 S. W. (2d) 300, 301(2-4).

or court rule.[7] Our prohibition statute, Sec. 1779, R. S. 1939-Mo. R. S. A. provides (italics ours) : "Upon a hearing, the court in term may render final judgment on the merits and for the costs, *as the facts may warrant* . . . " We hold this statute gives us a discretion, and we award relators judgment for the costs of this prohibition proceeding, against Joe Burtrum, petitioner in the habeas corpus proceeding below.

### The Contempt Proceeding.

The allegations of Myrtle Burtrum's complaint charging Joe and Norma Burtrum with contempt of this court, and the returns thereto of the respondents Joe and Norma Burtrum, are in sharp conflict as to the detailed facts. Particularly is this true of Joe Burtrum's return: that for Norma Burtrum contains no affirmative allegations but only general and specific denials. When counsel for the respective parties appeared here for oral argument of the cause last October, their attention was called to these conflicts, and to the fact that this court does not try causes on oral testimony, as in nisi prius courts [save sometimes in habeas corpus and in cases of direct contempt], but will appoint a referee or special commissioner to take the testimony.[8] The parties thereupon consented to submit the cause as upon an agreed statement of facts. , We must, therefore, confine ourselves to the undisputed facts and admissions against interest in the pleadings, but disregarding conflicting allegations.

In this situation, no facts are left for submission as against Norma Burtrum, and she must be discharged. As to Joe Burtrum, we stated in the beginning that the complaint of Myrtle Burtrum alleges he knew the prohibition proceeding was pending in this court when, on May 21, he enticed the minor child Ronald away from his mother, and on May 25 assaulted her and took the child by force. Burtrum's return denies these allegations of enticement and assault, and further denies he had "due" notice of the filing of the petition for prohibition in this court before May 25 [it does not include the date May 21]. Then it continues: "but in order not to give the appearance of evading such question your Respondent states that he was informed by his attorneys that the 'case had to go to Jefferson City' "—the State Capital where this court sits. In addition to that, the undisputed photostatic copy of Joe Burtrum's letter to Myrtle Burtrum dated May 25, 1947, the date of the alleged assault upon her, states that

---

[7]State ex rel. Stanley et al. v. Lujan, 43 N. M. 348, 93 Pac. (2d) 1002; State ex rel. Village of (etc.) v. McVicker, 136 Ohio St. 40, 23 N. E. (2d) 630; State ex rel. Williams v. Kemp (Mont.), 78 Pac. (2d) 585, 589(13); State ex rel. Breuner v. Sup. Ct. (Wash.), 7 Pac. (2d) 604(6); Boyce v. Bay Circuit Judge, 274 Mich. 575, 265 N. W. 469.

[8]13 C. J. sec. 115, p. 79; 17 C. J. S. sec. 85c, p. 120; 12 Am. Jur. sec. 74, p. 441; Clark v. Reardon, 231 Mo. App. 666, 668(1), 104 S. W. (2d) 407, 408(1).

"Ronnie is with me." We think all these facts, taken together show he took the child, and had actual **[565]** knowledge of the pendency of the prohibition suit here when he did it.

On that record Joe Burtrum's brief argues first that in any event he could not be guilty of indirect contempt of this court in the prohibition case before our preliminary writ was *issued* (on July 7), citing High, Extraordinary Legal Remedies (3 Ed.) sec. 804, p. 754, which seems to support his contention. But that is not the law in this state. For years it has been the practice in our appellate courts to notify the respondent by telegram of the filing of the petition for prohibition, and warning him to proceed no further pending disposition thereof. And it was held in State ex rel. Knisely v. Bd. of Trustees, 268 Mo. 163, 167(1), 186 S. W. 680, 681, that (italics ours): "after the issuance of our preliminary rule, or *even after notice is served* of the intended application for our preliminary rule, the trial court should proceed no further, but await the action of this court." The same language was quoted in State ex rel. Pettibone v. Mulloy, 330 Mo. 1084, 1086(1), 52 S. W. (2d) 402, 403(2).

The foregoing practice of notification by telegraph is not an idle ceremony. Rule 1.18 of this court, governing practice and procedure in the appellate courts, provides: "Except where otherwise expressly provided, service of notice upon the adverse party or his attorney shall be by telegram, letter, or by personal service of a written notice." Sec. 1776, R. S. 1939-Mo. R. S. A. provides the "petition shall be heard in the first instance, on presentation, summarily, or upon such notice to the adverse party as the court, or judge thereof in vacation, may order . . ." And our Rule 1.25 provides the petitioner for an original writ in our appellate courts "shall give not less than five days' (written) notice thereof to the adverse party, or his attorney." That notice was given in this case to the attorneys for the respondent in the writ, who also represented Joe Burtrum in the habeas corpus proceeding and represent him on this contempt citation; and they notified Burtrum before he took possession of the minor child—as we construe the admitted facts.

Actual notice of the pendency of a prohibition proceeding is enough to put interested persons on guard, though they have not been impleaded, as is shown in an Indiana case, State ex rel. Spencer v. Criminal Court, 16 N. E. (2d) 888, 889(1). In that state writs of prohibition are by statute directed to the lower *court*, itself, and not to the judge thereof. But sometimes the judge, and persons who might be expected to act under the authority of the court, are joined as respondents. In the cited case that had been done, and these individual respondents contend it was void. But the Indiana Supreme Court held it made no difference whether they had been impleaded or not, saying: "Without being named in the writ, or being made

parties to the proceeding, all judges or officers of courts, and all persons whomsoever, who have notice of the writ, are bound by writs of prohibition against courts, and are prohibited from acting upon authority of the prohibited court just as effectively as though they had been made parties to the action and writ." And if that be true they would be equally bound *not* to act in contravention of the court's authority.

Nevertheless, we are not convinced that Joe Burtrum is subject to punishment for contempt of this court. As stated in 12 Am. Jur., sec. 2, p. 389: "In its narrower and more usual sense, however, contempt has been defined as a despising of the authority, justice, or dignity of the court." The general definition given in 17 C. J. S., sec. 2, p. 4, is "a disobedience to the court, by acting in opposition to the authority, justice and dignity thereof."

In the prohibition proceeding pending here the only issue is whether the circuit court of Newton county, over which Judge Smith presided, had *jurisdiction* in the habeas corpus case to award the custody of the minor child Ronald Burtrum as between the parents, Joe Burtrum and Myrtle Burtrum; or whether that jurisdictional field has been preëmpted by the circuit court and/or the Kansas City Court of Appeals. With us it is a pure question of jurisdiction as between these courts. We have no authority over the disposition of the child as between the parents, and cannot say our authority was flaunted. If the complaint here had been lodged in the [566] court having jurisdiction of the divorce case the result might have been different. The alleged contemnor Joe Burtrum must be discharged.

Recapitulating on the two consolidated proceedings, a rule absolute in prohibition is ordered issued directed to the respondent Judge Emory E. Smith, prohibiting further proceedings in the habeas corpus case pending before him, except quashal of the writ, dismissal of the petition and taxing of costs. Costs of this prohibition proceeding are taxed against said petitioner in habeas corpus, Joe Burtrum. Both alleged contemnors, Joe Burtrum and Norma Burtrum, are discharged. The costs of the contempt proceedings are taxed against complainant Myrtle Burtrum. All concur.