In the Matter of the ESTATE of Elbert C. FIELDS, Deceased.

No. 40307.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 7, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied Nov. 14, 1979.

Thomas E. Toney III, Fordyce & Mayne, St. Louis, for appellant.

Michael A. Markenson, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, for respondent.

SATZ, Judge.

This cause was tried before the trial court without a jury. The facts are not in dispute.

In 1972, the Probate Court of St. Louis County appointed Olive Fields the executrix of the estate of her deceased husband, Elbert C. Fields. Subsequently, as her deceased husband's personal representative, she filed suit in the United States District Court, Eastern District of Missouri, under the Illinois Wrongful Death Act against the Chicago, Rock Island and Pacific Railroad Company for the wrongful death of her husband, which had occurred in Illinois. She lost that cause at trial and on appeal, and both the federal district and appellate courts taxed costs against her, as plaintiff, Olive Fields, Executrix of the Estate of Elbert C. Fields, in accord with the caption and style of that cause.

To satisfy these costs, the railroad secured a writ of garnishment from the federal district court against a checking and a savings account, both of which carried the name of the Estate of Elbert C. Fields, Deceased. Because the garnishment only partially satisfied the assessed costs, appellant, William M. Gibbons, as trustee for the railroad, petitioned the Probate Court of St. Louis County to allow the remainder of the costs assessed in the wrongful death action as costs of administration of the Estate of Elbert C. Fields (Fields Estate). The Probate Court denied appellant's petition, and the Circuit Court of St. Louis County affirmed the denial. We affirm the judgment of the Circuit Court.

Appellant Gibbons contends that the collective costs assessed in the wrongful death

action, when reduced to judgment, became a judgment entered by the federal court against Olive Fields as the Executrix of the Estate of Elbert C. Fields and that the Full Faith and Credit Clause of the United States Constitution, Art. 4, § 1, required the Probate Court of St. Louis County to enforce the federal judgment, as a foreign judgment, against the Fields Estate. We do not agree.

At the outset, we note that jurisdiction of the federal court was invoked on the grounds of diversity of citizenship. Thus, the federal court, in effect, sat as a Missouri Court, *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and implemented Missouri's choice of laws to the wrongful death action, *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which, in the instant case, required the application of Illinois law to the substantive issues raised. *See State ex rel. Kan. City Stock Yards v. Clark,* 536 S.W.2d 142, 145–146 (Mo. banc 1976); *State ex rel. Broglin v. Nangle,* 510 S.W.2d 699 (Mo. banc 1974). From this, it follows that the judgment of the federal court, in effect, would be nothing more than a judgment of a Missouri Court, and enforcement of that judgment, in the present circumstances, would rest on the doctrine of res judicata rather than full faith and credit. However, both parties apparently consider the full faith and credit doctrine as being the only relevant doctrine. Without explicit reasoning, they apparently consider the assessment of costs by the federal court to be a procedural matter, which, they agree, is controlled by federal law. From this, they apparently conclude that when the costs were reduced to judgment, the judgment for costs was a judgment of the federal court implementing federal statutory law, which, insofar as a Missouri Court is concerned, would be a judgment of a foreign court, not merged with the judgment on the merits.

For our purposes here, the legal effect of the differences between the two doctrines would be insignificant and the two doc-trines can be considered as functional equivalents. *See Riley v. New York Trust Co.*, 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885 (1942); *See also Jackson v. Hartford Accident and Indemnity Company*, 484 S.W.2d 315 (Mo.1972). Furthermore, application of either doctrine to the present issues would not cause the legal results urged by appellant. Thus, we do not decide which of the two doctrines is the relevant doctrine but assume, as the parties do, that the doctrine of full faith and credit is appropriate.

 As a general rule, giving full faith and credit to a foreign judgment precludes any inquiry into the merits of the underlying cause of action, and, also, precludes any questioning of the logic or consistency of the decision or the validity of the legal principles upon which the judgment is based, *e. g., Gibson v. Epps*, 352 S.W.2d 45, 47 (Mo.App.1961). Also, generally speaking, a foreign judgment, given full faith and credit, may be attacked only for lack of jurisdiction over the parties or subject matter, for failure to give proper notice, or, for fraud in the procurement of the judgment, *e. g. Scott v. Scott*, 441 S.W.2d 330 (Mo. 1969); *Young Elec., Inc. v. Susman*, 533 S.W.2d 625 (Mo.App.1975). Nonetheless, the court giving full faith and credit to a foreign judgment must still determine what party was concluded by the foreign judgment, because the foreign judgment can be enforced only against the party bound by that judgment. *See First Nat. Bank of Brush, Colo. v. Blessing*, 231 Mo.App. 288, 98 S.W.2d 149 (1936), and *First Nat. Bank v. Dowdy*, 175 Mo.App. 478, 161 S.W. 859 (1913).

 We first determine, then, whether the Fields Estate was a party to the federal litigation. Certainly, a decedent's estate can act only by and through the decedent's personal representative. *In re Estate of Cromwell*, 522 S.W.2d 36 (Mo.App.1975). However, the converse does not necessarily follow, and every act of the personal representative does not necessarily bind the estate. *See Blessing* and *Dowdy, supra.*

More specifically, in the instant case, if the acts of the executrix were not an exercise of rights on behalf of the Fields Estate to secure benefits for the estate, then, the Fields Estate would not be a party to those acts and would not be bound to satisfy the costs of those acts. *In re Peters*, 128 Mo. App. 666, 107 S.W. 406, 408 (1908). Thus, to determine whether the Fields Estate was a party to the wrongful death action, we look initially to that cause of action to determine what rights Olive Fields sought to enforce and what benefits she sought to gain. As previously noted, on the present facts, the definitions of these substantive rights and these benefits are found in the Illinois Wrongful Death Act, Ch. 70, §§ 1–2.1, Ill. R.S. (1973), creating that cause of action. *Klaxon Co. v. Stentor Co., supra; State ex rel. Broglin v. Nangle, supra.* The pertinent provisions of that Act provide that the person responsible for the death is liable for the death, if that person would have been liable for the injuries had the decedent lived, Ch. 70, § 1, Ill. R.S. (1973) and that where, as here, the decedent leaves a widow and children, the wrongful death action "shall be brought by and in the names of the personal representatives of (the) deceased person, and, . . ., the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse (formerly widow) and next of kin of such deceased person and . . . the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person". Ch. 70, § 2, Ill. R.S. (1973). The damages recovered are not required to be distributed or administered by a probate court, but, rather, "(t)he amount recovered in any such action shall be distributed by the court in which the cause is heard . . .", and distribution is not made according to any directions of the decedent, but, rather, the damages are to be distributed "to each of the surviving spouse and next of kin . . in the proportion, . . ., that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." Ch. 70, § 2, Ill. R.S. (1973).

As can readily be seen, these provisions simply reflect the basic provisions of Lord Campbell's Act, the prototype of most wrongful death acts. 2 Harper and James, *The Law of Torts*, Ch. XXIV (1974). The provisions create a new cause of action on behalf of the surviving spouse and next of kin to compensate them for the loss they suffer through the death of the decedent. Although the cause of action is brought in the name of the personal representative of the decedent, the action is not one on behalf of his estate nor is it a remedy for the wrong done to the decedent. The Act seeks rather to protect the interests of specifically named survivors and the action brought under it is for the exclusive benefit of those so named. Thus, Olive Fields, proceeding under this Act, was merely a nominal party. She did not act in her general capacity as Executrix of the Estate of Elbert C. Fields, but, rather, sued as a statutory trustee on behalf of herself, individually, as the widow of Elbert C. Fields, and for her two children, as his next of kin. *Van Meter v. Goldfarb*, 317 Ill. 620, 148 N.E. 391, 392 (1925); *City of Chicago v. Major*, 18 Ill. 349, 358 (1857); *Wright v. Royse*, 43 Ill.App.2d 267, 193 N.E.2d 340, 351 (1963); *McDavid v. Fiscar*, 342 Ill.App. 673, 97 N.E.2d 587, 589 (1951).[1] This concept is no different than and fits comfortably within Missouri's concept of the rights which are enforced by a wrongful death action when brought by the personal representative of a decedent. *See Caen v. Feld*, 371 S.W.2d 209 (Mo.1963); *Demattei v. Missouri-Kansas-Texas R. Co.*, 345 Mo. 1136, 139 S.W.2d 504 (1940); *Troll v. Laclede Gaslight Co.*, 182 Mo.App. 600, 169 S.W. 337 (1914).

---

1. With certain aberrations, *see Addison v. Health & Hospital Governing Com'n*, 56 Ill. App.3d 533, 14 Ill.Dec. 7, 9, 371 N.E.2d 1060, 1062 (1977), this continues to be the Illinois courts' interpretation of their Wrongful Death Act. *Wilbon v. D. F. Bast Co., Inc.*, 73 Ill.2d 58, 22 Ill.Dec. 394, 398, 382 N.E.2d 784, 788 (1978). *But see Franciscy v. Jordan*, 43 Ill.App.2d 344, 193 N.E.2d 219, 224 (1963).

Furthermore, the proceeds sought in the wrongful death action were not assets of the decedent, for they did not belong to his estate while he lived;[2] and, if recovered after his death, they would not go into the general administration of his estate for distribution to the legatees, distributees and creditors of his estate, but would be held in trust by the personal representative for the benefit of the statutory beneficiaries, Olive Fields, as decedent's widow, and his children, as next of kin. In short, the proceeds sought were not and would not become general assets of the Fields Estate, see, e. g., *Wright v. Royse, supra* and *Caen v. Feld, supra.* As the Court specifically stated in the *Feld* case: L.C. 212

> "There were no assets in the estate . .. The only asset listed in the probate proceedings was the claim (for wrongful death) upon which this suit was based, which in fact was not an asset of the estate because such sum that may be recovered does not become a part of the general assets of the estate subject to the claims of creditors, but it is for the exclusive benefit of the persons designated by the wrongful death statute as beneficiaries."

Viewed in light of these principles, Olive Fields, as Executrix of the Fields Estate, was merely the nominal party in the wrongful death action, and, in that action, she did not seek to enforce any rights on behalf of the Fields Estate nor did she seek any benefits which were or would become general assets of the Fields Estate. Thus, the Fields Estate was not a party to the wrongful death action and the judgment for costs entered in that action cannot be enforced against the Fields Estate. *In re Whitlow's Estate*, 184 Mo.App. 229, 167 S.W. 463, 468 (1913); *In re Peters, supra.*

Appellant cites *Kass v. Gulf, Mobile & Ohio R.R.,* 91 F.Supp. 1016 (W.D.Mo.1950),

as support for his contention that the federal court's judgment for costs, in the present case, was a judgment against the Fields Estate. In the *Kass* case, the Federal District Court, Western District of Missouri, assessed costs incurred in an unsuccessful wrongful death action against the decedent's personal representative and explicitly refused to assess those costs against the decedent's widow and next of kin, because the widow and next of kin were not named as parties plaintiff. The court did not specifically require that the assessed costs be satisfied by estate assets. Arguably, by its refusal to assess costs against the widow and next of kin, the court may have implied this requirement as an ultimate conclusion. However, the court based its decision on its interpretation of our state statute permitting the taxing of costs against the real party in interest, § 1421 RSMo, now § 514.210 RSMo. That interpretation may have been reached by an overly restrictive method of statutory construction, see *State ex rel. Burtrum v. Smith*, 357 Mo. 134, 206 S.W.2d 558, 563–564 (banc 1947), and we are neither persuaded nor constrained to follow its possible implications.

In addition, appellant cites *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 362 F.2d 799 (2d Cir. 1966), cert. denied, 385 U.S. 948, 87 S.Ct. 322, 17 L.Ed.2d 227 (1966), as support for his contention that the costs incurred by a decedent's personal representative in an unsuccessful prosecution of a wrongful death action should be assessed against decedent's estate. In the *Berner* case, co-executors unsuccessfully brought suit for wrongful death on behalf of the widow and children of the decedent. On appeal, the sole question was whether the assessed costs were excessive and not whether the trial court could or should assess costs against the estate. The appellate court held the costs

---

**2.** A recent statutory addition to the Illinois Wrongful Death Act provides a method for the appointment of a special administrator when "the only asset of the deceased estate is a cause of action arising under this Act . .". Ch. 70, § 2.1, Ill. R.S. (1977). This reference to the wrongful death action as an estate asset is

simply legislative shorthand or acknowledgement of the procedural legal fiction that, after death, an administrator can be appointed only if there is an estate subject to possible administration. As noted, substantively, the action is not a general asset of the decedent's estate. See *Caen v. Feld*, 371 S.W.2d 209, 212 (Mo.1963).

were not excessive, but there is no clear indication that the estate was to bear the burden of those costs. As a matter of fact, the court noted that the wrongful death action was brought by the executors for and on behalf of the widow and children of the deceased, and the executors also argued that "such heavy charges should not be imposed upon the widow and children . . . ", *Id.* at 801. Unless the widow and children were the sole beneficiaries of the estate, and that fact is not clear, the court and executors may well have been acknowledging, by their respective statements, that the widow and children, as the real parties in interest, would bear the assessed costs, rather than the estate.

The judgment of the Circuit Court is affirmed.[3]

DOWD, P. J., and CRIST, J., concur.

**3.** In this opinion, we address the only issue raised, the issue of full faith and credit. A related issue not directly addressed is whether, under Missouri law, the costs incurred in the unsuccessful prosecution of a foreign or domestic wrongful death action by a decedent's representative should be allowed as costs of administration of the decedent's estate. Research has disclosed no Missouri case directly addressing this issue, and in the few other jurisdictions where this issue has been considered, the courts have held or stated that the costs so incurred should not be allowed as costs of administration. *State ex rel. Baltimore & O. R. Co. v. Daugherty,* 138 W.Va. 144, 77 S.E.2d 338, 341 (1953); *Pettibone v. Moore,* 223 Ind. 232, 59 N.E.2d 114, 116 (1945).

However, forceful arguments can be made for the allowance of such costs as costs of administration. In general, the arguments are made that the proceeds of the wrongful death action can be sensibly construed to be assets of the decedent's estate; that refusal to allow such costs as costs of administration places the estate's legal representative in an unenviable and, perhaps, an untenable position, for, on the one hand, he is required to initiate a wrongful death action for another's benefit, while, on the other hand, he runs the risk of being held personally responsible for the costs of that action; and that if the decedent had lived and had unsuccessfully prosecuted an action for his injuries, the costs of the action would have depleted his estate, and the distributees and the creditors of his estate would have had no more control and would have been no less affected by that depletion than they would be if the decedent had died from his injuries and the costs of the wrongful death action were satisfied out of his estate. *See dissenting opinion, State ex rel. Baltimore & O. R. Co. v. Daugherty, supra,* 77 S.E.2d at 341–349.

The basic reasoning of the present opinion answers the thrust of these arguments. Additionally, we note that to require the estate to pay for the costs of the wrongful death action would permit the statutory beneficiaries to finance their personal cause of action at the expense of the distributees and creditors of the decedent's estate. Furthermore, the defendant in the wrongful death action can request the costs of that action to be secured and, thus, lessen or obviate any financial risk resulting from his inability to satisfy those costs out of estate assets. However, the distributees and creditors of the estate have no control over the wrongful death action and, thus, the financial risk created for them by allowing the estate assets to satisfy the costs of a wrongful death action could not be similarly lessened or obviated.