13026

BOYD v. RICHIE

(155 S. E., 844)

November, 1929.

*Mr. Hugh Beasely*, for appellant,

*Mr. J. M. Nickles,* for respondent,

November 14, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

It appears from the record that on or about March 28, 1914, one Jason Boyd, an employee of the Seaboard Air Line Railway Company, was killed in a wreck as a result of the negligence of his employer. He left surviving him a widow and a small son. The widow, Matilda Boyd, administered on the estate of her deceased husband, the Probate Court requiring her to execute a bond in the sum of $100, which was signed by one L. A. Richie, the defendant in the present case, as surety. Thereafter, as such administratrix, Mrs. Boyd brought an action under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) against the railroad company for damages for the wrongful death of her husband, the suit being instituted for the benefit of

herself, as his widow, and his son, Allen Boyd, who was then about eight or nine years of age.

The jury, on trial of the case, returned the following verdict: "We find for the plaintiff Two Thousand Two Hundred Twenty-seven and 27/100 ($2,227.27) Dollars, of which we apportion Four Hundred Eighty-four and 92/100 Dollars for the benefit of Allen Boyd and One Thousand Seven Hundred Forty-two and 35/100 ($1,742.35) for the benefit of Matilda Boyd."

After Allen reached his majority, his mother, the administratrix, in the meantime having died leaving no estate, he brought this action against the defendant, Richie, as surety on the bond, alleging that the amount of the verdict rendered in the case against the railroad company had been paid to the administratrix, but that he had never received any part of it. The defendant interposed a demurrer to the complaint, which was sustained by his Honor, Judge Mann, on the ground that the money apportioned Allen in the action named was never any part of the estate of Jason Boyd, and any misappropriation of such funds by the administratrix would not be such a violation of the condition of the bond signed by the surety, Richie, as would make him liable thereon. The plaintiff appeals and excepts to the holdings of the Circuit Judge.

The appellant concedes that the money in question did not become a part of the estate of the intestate Boyd, in the sense that it became liable for his debts and passed under the statute of distribution. He contends, however, that the administratrix brought the action as she was bound to do under the statute; that she collected the money by virtue of her office; that she was bound to disburse it, not personally, but officially; and that the surety knew this as a matter of law, and cannot now deny liability on the bond.

We are impressed with this view of the matter. While Matilda Boyd was appointed administratrix of the estate of Jason Boyd, in that capacity, neverthe-

less, she was made by law trustee of the estate of the minor, Allen Boyd, coming into her hands as a result of the action brought by her under the statute as such administratrix. Certainly, with regard to that fund, either in its collection or disbursement, she could not and did not act in the capacity of a private citizen, for as such she had no authority to act in the matter, and officially it is evident that she could only act as administratrix.

In the case of *Ætna Casualty & Surety Co. v. Young,* 107 Okl., 151, 231-P., 261, 264, the following interesting and logical discussion of the question is found:

"The statutes provide that this suit to recover this money shall be maintained by the personal representative, an officer of the Court, and in this case the personal representative is the administratrix of the estate of Al Young, deceased. It was the statutory duty of the administrartix in her official capacity as administratrix, and not otherwise, to maintain this action. The right and duty to maintain the action includes the right and duty to collect and receive into her own hands, for distribution, the moneys which the action is brought to recover. Having been appointed such administratrix, no officer or person other than she could do so, and she could do so only in her official capacity. Now the surety company on the bond says to us that she must distribute the fund, not in her official capacity, as administratrix, but as a statutory trustee. Why, the only statutory trustee we have here is the administratrix and she is an officer of the Court. If it be otherwise, then such statutory trustee of this fund is not an officer but an unsworn, unbonded private person who played the part of an officer of the Court in exercising the power to collect and *ipso facto* becomes a private person to distribute funds in his official hands. Was it the intention of the lawmakers to grant this power to collect to one, as an official, and then with the money in her hands make no requirement that as an official she distribute the same? Holding the money as an official, does she distrib-

ute same as a private person? No, for in that same capacity in which she received, so in that capacity must she distribute. Then she disburses as an officer, and nowhere in relation to these matters was but one office created by law, and that office was labeled administratrix, the office by authority of which alone she, and none other, could collect. The duties she owed in disbursing this fund were the duties consigned to her by law; they were official because as a private person she had no right to collect the money. These duties then are a part of the statutory obligation of her trust.  *  *  *

"If our theory of the liability of the surety is erroneous, why did the lawmakers enact into Section 824 the provision that this suit should be maintained only by the administrator if one were appointed? Why were they not content to let the widow or the next of kin themselves maintain this action in their own names?  *  *  *  Bodly stands out the only plausible reason, to wit, that they desired to give the heirs the protection of a bonded officer."

In *Patterson v. Tate,* 141 Tenn., 607, 213 S. W., 981, 983, with regard to this question, the Court had this to say:

"By the third assignment of error it is insisted that the Court of Civil Appeals erred in not holding that the judgment against the administrator and complainants, as his sureties, was void, because the fund received by said administrator from the railroad company in settlement of claims against it for the wrongful killing of the intestates of said administrator did not constitute any part of the estates of said intestates, and the sureties of the administrator could not, therefore, be held liable for the same.

"We think this assignment of error is wholly without merit.

"It was held in *Glass v. Howell,* 2 Lea (Tenn.), 50, that the sureties of an administrator who has actually collected damages sustained by his intestate by injuries resulting in his death are liable to the extent of the penalty of the administrator's bond for the amount thus collected, although

the administrator was permitted by the next of kin to retain the money until certain debts of the intestate, for which the fund was not legally liable, were paid out of it; a credit being allowed for the debts thus paid."

While the holding of the Circuit Judge in the case at bar is supported by authority (*Maryland Casualty Company v. McAlpin* [31 Ga. App., 303], 120 S. E., 644), the reasoning in the *Young case, supra,* is highly convincing, and appears to us to be conclusive of the question.

We are influenced, also, to some extent in the conclusion we have reached by an examination and comparison of Sections 5387 and 5388 of Volume 3 of the Code of 1922, the first relating to the oath required of an administrator, and the latter to his bond, and Sections 367 and 368 of Volume 1 of the Code of 1922, relating to civil actions for wrongful acts causing death (Lord Campbell's Act). The statutes as to the administrator's oath and bond seem to have been first enacted in 1712 and amended in 1789. Lord Campbell's Act, it appears, was adopted originally in 1859. All these statutes must be, of course, considered together, since they were readopted in the Code of 1922. Before the enactment of the provisions of Lord Campbell's Act, an administrator, of course, was not required, and had no right to bring the suit provided for in that enactment. When Lord Campbell's Act was passed, a new duty was imposed upon an administrator, and his bond, of course, covered properly the performance of any duty imposed upon him by statute at the time of his qualification as administrator. .

Section 369 of Volume 1 of the Code also bears at least indirectly upon the matter, since it is there provided that the administrator shall be liable in a case tried under Sections 367 and 368, *Id.,* for costs of the Court "in case there be a verdict for the defendant, or nonsuit or discontinuance, out of the goods, chattels and lands of the testator, or intestate, if any." There can be no question that the bond of

an administrator would require him to pay the costs of the Court if the estate of his intestate had property in the administrator's hands subject to the payment of those costs. We take this as expressive of the legislative intent that the bond of an administrator required a proper distribution of any moneys coming into the administrator's hands as the result of a suit for the recovery of damages for the death of his intestate by the wrongful act of another.

The order appealed from is reversed and the case remanded for trial.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (dissenting) : I favor the affirmance of the order of his Honor, Judge Mann, sustaining the demurrer of the defendant to the complaint, for the reasons which follow:

The sole question in the appeal is whether the surety upon an administrator's bond may be held liable to the extent of the bond for the failure of the administrator to properly distribute the proceeds of a judgment recovered by him for damages on account of the wrongful death of the intestate. The order of his Honor, the Circuit Judge, held not; the plaintiff has appealed.

The pertinent facts are clearly set forth in the opinion of Mr. Justice Blease, and need not be repeated.

It has been thoroughly settled by the decisions of this Court, notably the case of *In re Estate Mayo,* 60 S. C., 401, 38 S. E., 634, 637, 54 L. R. A., 660, that the action permitted by Lord Campbell's Act, by the administrator of one whose death was caused by the negligence of another, is not the survival or revival or continuance of a cause of action had by the deceased in his lifetime, but that the statute creates an entirely new cause of action, for the benefit of the particular persons named. See, also, *Bennett v. R. Co.,* 97 S. C., 27, 81 S. E., 189. The statute further provides that "in every such action the jury may give such damages as they may think proportioned to the injury resulting from

such death to the parties respectively for whom and for whose benefit such action shall be brought and the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate."

From the express language of the statute I do not think that there could arise a question of the proposition that the recovery of damages in such a case cannot be considered an asset of the intestate's estate. The administrator has no title to the fund; it is not subject to the debts of the intestate; it is not distributable to the beneficiaries as heirs-at-law of the intestate.

It is true that in the *Mayo case* it is declared in the leading opinion by Justice Jones (later Chief Justice), upon the question of the jurisdiction of the Court of Probate of Florence County: "It is doubtless true, as a general proposition, that the existence of assets of the intestate in this State is essential to give the Probate Court jurisdiction to grant administration on the estate of a non-resident, and it is also true that the usual meaning attached to the word 'assets' is any property applicable to the payment of debts. But in view of the statute under consideration, a broader signification ought to be given to the term 'assets,' so as to include any right of action which cannot be enforced except by the administrator, and which is made distributable by the administrator under statutory directions."

Justice Gary (later Chief Justice) concurred in the result of the opinion. I assume that Justice Pope (later Chief Justice) concurred in the opinion of Justice Jones. The Chief Justice, McIver, delivered a vigorous dissent. His opinion expresses the opposite view so clearly that a liberal extract from it is permissible, and should be declared as the law:

"Looking into the terms of this statute, we do not find a single word or phrase which even implies an intention on

the part of the Legislature to make this right or its fruits any part of the assets of the estate of the decedent. On the contrary, we do find there language which plainly implies that the Legislature intended that the same should not be any part of the assets of the estate of the decedent. In that portion of Section 2316 (Rev. St., 1893), which was originally taken from the second section of the Act of 1859, prescribing how the amount recovered should be divided among the beneficiaries, these words are used: 'Shall be divided amongst the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate, *and the amount recovered had been personal assets of his or her estate.*' These words which I have italicized necessarily imply that the Legislature did not intend that the amount recovered should be the assets of the estate of the decedent, but should be distributed among the beneficiaries mentioned in the same shares as if they had been personal assets of his estate. It was the same thing as saying that, although the amount recovered is no part of the personal assets of the estate of the decedent, yet they shall be divided among the beneficiaries in such shares as they would have been entitled to if the same had been such personal assets. The only Act which I have been able to find amending this section (Act 1898 [22 St. at Large, 788]) not only makes no change in this respect, but, on the contrary, uses precisely the same words which I have italicized above, and only makes certain changes in the persons mentioned as beneficiaries. Besides, to suppose that the Legislature intended to make this right of action or the fruits thereof a part of the assets of the estate of a decedent, and at the same time to deny to the creditors of such decedents the right to have such assets applied to the payment of their debts, as both in law and good morals they are entitled to, would be to impute to the Legislature an intention to lend its aid to the perpetration of a fraud upon such creditors; and this no Court ought to do. It seems to me clear, there-

fore, that the right of action conferred by the statute, or the fruits thereof (as the one necessarily follows the other), can in no sense be regarded as any part of the assets of the estate of a decedent. These views have the support of high authority. See *Stewart v. Balt. & Ohio R. R. Co.*, 168 U. S., 449, 18 S. Ct., 105, 42 L. Ed., 537; *Martin v. Balt. & Ohio R. R. Co.*, 151 U. S., 695, 696, 14 St. Ct., 533, 38 L. Ed., 311, Am. & Eng. Enc. Law (2nd Ed.), 859."

In the case of *Bennett v. R. Co.*, 97 S. C., 27, 81 S. E., 189, the complaint contained two causes of action: An action under the survival statute and an action under Lord Campbell's Act. The defendant demurred upon the ground of misjoinder of causes of action. The demurrer was sustained, this Court saying: "While the party plaintiff is nominally the same as to each cause of action, in reality his relation to and interest in each is entirely separate and distinct. In the one he is the representative of the estate of the deceased, and the recovery, if any, is for damages resulting from the injury to deceased, and the amount recovered will go into his hands as assets of the estate, liable for the payment of debts and other claims against the estate. In the other he is the representative of the beneficiaries named in the statute, and the recovery, if any, is for damages resulting to them, and the amount recovered will be distributed amongst them. Therefore, as representative of the estate, the cause of action in favor of the husband and children does not affect him; and, as representative of the husband and children, the cause of action in favor of the estate does not affect him."

"Damages recoverable under death statute are not 'assets of estate' within ordinary meaning of word." *Ghilain v. Couture* (N. H.), 146 A., 395, 65 A. L. R., 553.

"Claim for damages for wrongful death * * * is an asset of decedent's estate merely for the purpose of collection and distribution." *Newell v. Bushard*, 204 Ala., 73, 85 So., 274.

"The money recovered in an action * * * for wrongful death does not belong to decedent's estate, but where action is by his personal representative he acts solely as statutory trustee for benefit of the heirs, on account of whom recovery is had." *In re Riccomi's Estate,* 185 Cal., 458, 197 P., 97, 14 A. L. R., 509.

"The distribution of funds recovered for wrongful death is not within the jurisdiction of the Probate Court." *Estate of Riccomi,* 185 Cal., 458, 197 P., 97, 14 A. L. R., 509.

"Sections * * * create a new cause of action, to be prosecuted for the exclusive benefit of the beneficiaries named therein; the damages recovered in such suit do not become assets of decedent's estate." *St. Louis & S. F. R. Co. v. Goode,* 42 Okl., 784, 142 P., 1185, L. R. A., 1915-E, 1141.

In *Indianapolis Co. v. Thompson,* 81 Ind. App., 498, 134 N. E., 514, it was held that the damages recovered by an administrator on account of the wrongful death of the intestate do not become a part of the estate, but become a trust fund to be paid to the statutory beneficiaries.

In *Danforth v. Emmons,* 124 Me., 156, 126 A., 821, it was held that the right of action for death under the statute is a right of action for the benefit of certain designated persons, and not for the benefit of the estate, creditors, or distributees.

In *Turner v. R. Co.,* 153 Minn., 509, 190 N. W., 986, it was held that the recovery in an action under the death statute, though brought and prosecuted by the administrator, forms no part of the estate to be administered by him, but inures exclusively to the benefit of the next of kin.

In *Masek v. Hedlund,* 162 Minn., 291, 202 N. W., 732, it was held that money received by the administrator in an action for wrongful death under the statute does not belong to the estate but to those named in the statute.

In the case of *In re Troyer's Estate,* 48 Nev., 72, 227 P., 1008, it was held that the money paid to the administrator in

a compromise settlement with the carrier for damages under the death statute did not become a part of the estate, but was for the use and benefit of the persons named in the statute.

In *Hamilton v. R. Co.,* 219 N. Y., 343, 114 N. E., 399, Ann. Cas., 1918-A, 928, it was held that the cause of action for death under the statute was not a part of the estate of the decedent. Writ of error dismissed. 248 U. S., 369, 39 S. Ct., 95, 63 L. Ed., 307.

In *Davis v. R. Co.,* 233 N. Y., 242, 135 N. E., 277, it was held that the proceeds of a recovery in an action for death under the statute are held by the representative, not as general assets of the estate, but subject to a special trust.

In the case of *In re Meng,* 96 Misc. Rep., 126, 159 N. Y. S., 535, it was held that damages recovered by executor in action for wrongful death under the statute are not strictly part of decedent's estate.

In the case of *In re Arneberg's Estate,* 184 Wis., 570, 200 N. W., 557, it was held that under no circumstances is a recovery by a personal representative under the death statute a part of the estate of deceased.

In *Whitley v. R. Co.,* 23 Idaho, 642, 132 P., 121, it was held that a judgment obtained under the statute for wrongful death inures to the benefit of the heirs of decedent, and does not become a part of decedent's estate. Affirmed. 237 U. S., 487, 35 S. Ct., 655, 59 L. Ed., 1060, L. R. A., 1915-F, 736.

In *Kennedy v. Davis,* 171 Ala., 609, 55 So., 104, Ann. Cas., 1913-B, 225, it was held that, in an action for wrongful death under the statute, the damages collected vest exclusively in the distributees of the estate and are not assets subject to administration; the personal representative being merely an agent to collect and pay them over.

In *Ruiz v. Santa Barbara Co.,* 164 Cal., 188, 128 P., 330, it was held that an action for wrongful death under the statute is brought by the personal representative as

statutory trustee for the heirs, and that the recovery belongs to them and not to the estate.

In *Jones v. Leonardt*, 10 Cal. App., 284, 101 P., 811, it was held that the recovery by an administratrix for the death of her decedent under the statute is for the benefit of the heirs and not for the estate.

In *Allen v. Napier*, 144 Ga., 38, 85 S. E., 1013, it was held that the recovery for the death of a servant, being for the benefit of the named persons under the statute, is not an asset of the estate.

In *Turnquist v. Hannon*, 219 Mass., 560, 107 N. E., 443, it was held that the money received by the administratrix as damages for negligently causing the death of a person is, under the statute, not assets in her hands, but is held as trustee for those designated in the statute.

In *Troll v. Company*, 182 Mo. App., 600, 169 S. W., 337, it was held that under the statute the amount recoverable as damages for the death of decedent was not an asset of his estate, but belongs to the persons designated in the statute; that, where the suit is brought by the administrator, he is a mere trustee to maintain the action for those entitled to the damages.

In *Thompson v. Mann*, 65 W. Va., 648, 64 S. E., 920, 22 L. R. A. (N. S.), 1094, 131 Am. St. Rep., 987, it was held that money recovered in an action by an administrator under the statute for causing the death of his decedent by wrongful act is not an asset of the estate in the hands of the administrator liable for his debts, but belongs to persons entitled thereto.

It has been suggested, and the idea is thrown out in several of the decided cases, notably the *Mayo case*, that the action can be instituted and conducted only by the administrator or executor, and the amount of recovery must be distributed by him among the beneficiaries. The statute does not so declare; it expressly provides that the action shall be brought "by or in the name of" such representative. It

is conceivable that the representative might decline to bring the action; that would not prevent the beneficiaries from instituting it in his name and conducting the litigation without regard to him, and making the distribution, under the direction of the Court without the representative being consulted or the money passing through his hands. It is noticeable that the statute makes no provision for a division by the representative. This is a forcible indication that the recovery was not intended to be a part of the assets of the estate.

It may be that, if the statute had imposed in mandatory fashion the duty upon the administrator of instituting and conducting the action, and receiving and distributing the money to and among the beneficiaries, the representative would have been constituted a trustee for the beneficiaries in his official capacity; and that he and his bondsmen who guaranteed the faithful performance of all of his duties might be held liable for his default; but such is not this case. The bond was in the form prescribed by the statute, precisely as set forth therein. By reference to it there can be no doubt that it binds the administrator to faithfully account for the assets of the estate; not to account for what were not assets of the estate, but payable to specifically named beneficiaries. The condition of the required bond, set forth in Section 5388, is as follows:

"The condition of the above obligation is such, that if the above-bound A B, administrator of the goods, chattels, and credits of C D, deceased, do make a true and perfect inventory of all and singular the goods, chattels, and credits of the said deceased, which have or shall come to the hands, possession, or knowledge of the said A B, or into the hands or possession of any other person or persons for him, and the same so made do exhibit into the said Court of Probate, when he shall be thereto required, and such goods, chattels, and credits do well and truly administer, according to law, and do make a just and true account of his actings and do-

ings therein when required by the said Court, and all the rest of the said goods, chattels, and credits. which shall be found remaining upon the account of the said administration, the same being first allowed by the said Court, shall deliver and pay unto such persons respectively as are entitled to the same by law;   *   *   *ᵧ then this obligation to be void, otherwise to remain in full force."

The case of *Maryland Co. v. McAlpin,* 31 Ga. App., 303, 120 S. E., 644, is precisely in point. The syllabus by the Court, which constitutes the entire decision, is:

"Where an administrator of the estate of a deceased employee of a railroad company receives money in settlement of a death claim against the railroad company, arising out of the homicide of the deceased employee (the railroad company and the deceased employee being engaged in interstate commerce at the time of the homicide), the surety upon the bond of the administrator is not liable for the misappropriation by the administrator of the money so received, as such fund is no part of the decedent's estate, but is for the benefit solely of certain designated beneficiaries named in the Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665). *Cooper v. Cooper,* 30 Ga. App., 710, 119 S. E., 335. This is true although the statute law of this State (Civil Code of 1910, § 3972) provides that the bond of every administrator 'shall be conditioned for the faithful discharge of his duty as such administrator, as required by law.' "

In *Bradford v. Watson,* 65 Fla., 461, 62 So., 484, the syllabus by the Court is as follows:

"Under the statute, where a life insurance policy is made payable to the 'executors, administrators or assigns' of the decedent, the insurance is in law, payable to the surviving widow and children of the decedent. Such insurance, when the decedent leaves a widow and children, is not a part of the decedent's estate for the purpose of paying debts, or for distribution; and the administratrix of the decedent's estate as such is not entitled to collect the insurance. Consequently,

the sureties on the bond of the administratrix are not liable for the application of the insurance actually collected by the administratrix."

In *Jackson v. Wilson,* 117 Ala., 432, 23 So., 521, 522, it was held: "A surety on an administrator's bond is only liable for property which came to the administrator's hands which was subject to administration."

The Tennessee Court, in the case of *Patterson v. Tate,* 141 Tenn., 607, 213 S. W., 981, 983, takes a contrary view. The Court does not discuss the contention of the surety, but dismisses it with the observation: "We think this assignment of error is wholly without merit"—not a very complimentary statement to the many Courts which have taken the opposite view.

The case of *Ætna Co. v. Young,* 107 Okl., 151, 231 P., 261, appears to have been decided under a statute which made it mandatory upon the administrator, and upon him only, to institute the action, conduct it, collect the recovery, and disburse it. Even if the condition in the case at bar paralleled that, the bond in question was confined by its terms to the assets of the estate passing through the hands of the administrator.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.