STATE *ex rel.* THE BALTIMORE AND OHIO
RAILROAD COMPANY, *a Corporation*

*v.*

DUNCAN W: DAUGHERTY, *Administrator of*
JOSEPHINE M. STRINGER, *Deceased, et al.*

(No. 10498)

and

STATE *ex rel.* THE BALTIMORE AND OHIO
RAILROAD COMPANY, *a Corporation*

*v.*

DUNCAN W. DAUGHERTY, *Administrator* OF
JESSE P. STRINGER, *Deceased, et al.*

(No. 10499)

Submitted January 20, 1953.   Decided March 24, 1953.

HAYMOND, PRESIDENT, dissenting.

*George S. Wallace, George S. Wallace, Jr.,* for plaintiffs
in error.

*Daugherty & Daugherty,* for defendants in error.

LOVINS, JUDGE:

These actions of debt were brought to this court by writs of error to judgments of the Circuit Court of Cabell County. The State of West Virginia, who sued for the use and benefit of the Baltimore and Ohio Railroad Company, a corporation, brought two actions of debt, one against Duncan W. Daugherty, Administrator of the estate of Josephine M. Stringer, and the Aetna Casualty and Surety Company, a corporation, the surety on such administrator's bond, and the other against Duncan W. Daugherty, administrator of the estate of Jesse P. Stringer and the Aetna Casualty and Surety Company, the surety on his bond as such administrator.

The object of these actions of debt is to recover from the administrator two judgments rendered by the Circuit Court of Cabell County for court costs awarded in two certain actions hereinafter mentioned.

The trial court sustained demurrers to the declarations herein with leave to the plaintiff to amend. Upon the plaintiffs declining to amend the declarations, the actions were dismissed. Plaintiffs prosecute this writ of error.

Duncan W. Daugherty was appointed administrator of the estate of Josephine M. Stringer and Jesse P. Stringer by the County Court of Cabell County, West Virginia, on the 22nd day of March, 1948. Two bonds were given by such administrator, each in the penal sum of $5000.00.

After the qualification of such administrator, he employed an attorney to bring two actions against the Baltimore and Ohio Railroad Company for allegedly causing the death of his decedents by wrongful act.

The decedents lost their lives in a collision at a grade crossing between an automobile in which they were riding and one of the trains of the Baltimore and Ohio Railroad Company. For additional facts concerning such accident, see opinion of this court in the two cases of *Dun-*

*can W. Daugherty, Administrator* v. *B. & O. Railroad Co.,* 135 W. Va. 688 64 S. E. 2d 231.

The pertinent facts which we have been able to glean from the meager record before us are as follows: Daugherty, Administrator of Josephine M. Stringer, recovered a jury verdict in the amount of $3600.00, and a judgment was entered thereon by the Circuit Court of Cabell County on the 3rd day of January, 1950. In the case of Daugherty, Administrator of Jesse P. Stringer, the plaintiff was awarded a jury verdict in the amount of $1000.00, and judgment was entered thereon on the 11th day of March, 1950.

On petition of the Baltimore and Ohio Railroad Company, a writ of error and supersedeas to each of the judgments above was awarded by this court. Upon the hearing, the cases were consolidated, heard together, and reversed. The verdicts above mentioned were set aside and a new trial awarded. See *Duncan W. Daugherty* v. *Baltimore and Ohio Railroad Company, supra.*

The Circuit Court of Cabell County, upon the mandate of this court, entered two judgments for costs in favor of the Baltimore and Ohio Railroad Company. In the case of Daugherty, Administrator of Josephine M. Stringer, the Circuit Court entered a judgment for the sum of $978.65, and in the case of Daugherty, Administrator of Jesse P. Stringer, against the Baltimore and Ohio Railroad Company, the Circuit Court of Cabell County entered judgment for $766.75. It was provided in the judgment orders that both judgments should be paid out of any funds in the possession of the administrator belonging to the respective estates. Executions were issued on each of such judgments, and placed in the hands of the Sheriff of Cabell County who returned the executions, "No property found".

It is alleged in the declarations in the instant cases that money belonging to the estates, amounting to the sum of $5874.13, came into the hands of the administra-

tor. The record is not clear as to whether the above sum of money belonged to both estates, or whether such sum came into the hands of the administrator of each estate separately.

On a date not disclosed by the record, the administrator made an accounting before a Commissioner of Accounts of Cabell County, who ordered the administrator to pay the surplus to the distributees after payment of certain claims and costs of the administration. The County Court of Cabell County confirmed such report and entered an order showing such confirmation. According to the record, the administrator complied with the order of the county court.

The records of the two actions here considered are identical except as to the amounts of judgments entered on the jury verdicts, the dates of the return of the verdicts and the rendition of such judgments in the first two actions, and the amounts of the judgments rendered for costs, upon the mandates of this court.

The two judgments not having been collected, the plaintiffs in the instant actions brought these actions of debt to recover damages for a breach of the conditions of the administrator's bond, assigning as breaches of such condition, (1) that the administrator did not faithfully discharge the duties of his office as administrator, and (2) did not account for or pay over, as required by law, all money that came into his hands by virtue of his office as administrator of the two estates.

The defendant demurred to the plaintiff's declarations and assigned nine grounds of demurrer, most of which have no bearing on the real question at issue. The first ground is: (1) That the declarations failed to charge a breach of the conditions of the bond. The trial court sustained the demurrers to the declarations as hereinabove stated.

In the briefs filed, counsel for the administrator cited one case, *Wingfield* v. *Neall, Trustee,* 60 W. Va. 106, 54

S. E. 47, which in effect holds that a writ of error prosecuted to this court is a commencement of a new action and is not a continuation of the old one. We do not deem that holding of any importance in solving the problem presented by this record.

Code, 44-2-23 provides for the exoneration of a personal representative from personal liability upon the happening of certain events mentioned in that statute. We cannot say however, from the record before us, whether such statute applies to the instant case.

The claim of the plaintiff, as above stated, is founded upon the judgments for court costs accruing by reason of the two actions at law originally instituted by the administrator under Code, 55-7-5, 6. Section 6 *id* reads in part as follows: "Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. * * * and the amount so recovered shall not be subject to any debts or liabilities of the deceased. * * * "

In the body of the opinion in *Wilder* v. *Transit Co.*, 120 W. Va. 319, 197 S. E. 814, this language appears: "Here, the claim asserted [for damages for death by wrongful act] never was owned by the decedent. It was prompted into being by virtue of decedent's death. By no stretch of the legal imagination, we think, can the recovery claimed be said to be a part of the decedent's estate." See *Richards* v. *Iron Works*, 56 W. Va. 510, 511, 49 S. E. 437; *Thompson* v. *Mann*, 65 W. Va. 648, 650, 64 S. E. 920; *Peters* v. *Trust Co.*, 118 W. Va. 484, 191 S. E. 581. In *Fetty* v. *Carroll*, 118 W. Va. 401, 190 S. E. 683, the following language appears: "Under Code, 55-7-6, an action for wrongful death is for the exclusive benefit of the decedent's next of kin; and while the decedent's administrator alone may sue, his relation to any fund

recovered is not that of decedent's representative, but that of trustee for the next of kin."

In the instant cases, no recovery was had, but had there been a recovery, we do not think it would have been a part of decedent's estate.

It may be said that cases in other jurisdictions have held that the sureties on a personal representative's bond are liable for the proper administration of the amount which such personal representative recovers for decedent's death by wrongful act. See *Watkins* v. *Purnell*, (Ark.) 62 S. W. 2d 20; *Patterson* v. *Tate*, (Tenn.) 213 S. W. 981.; *United States Fidelity & Guaranty Co.* v. *Decker*, (Ohio) 171 N. E. 333; *Aetna Casualty & Surety Co.* v. *Young*, (Oklahoma) 231 P. 261; *Boyd* v. *Ritchie*, (S. C.) 155 S. E. 844; *Vukmirovich* v. *Nickolich*, (Minn.) 143 N. W. 255; *Goltra et al.* v. *The People, Use, etc.*, 53 Ill. 224. But the case of *Thompson* v. *Mann, supra,* tends to show that this court did not reach the same conclusion in that case as disclosed by opinions in the cases just cited from other jurisdictions.

It is not necessary to a decision in this case to determine whether a personal representative and the surety on his official bond are liable for proper administration of a fund recovered by him in an action for damages on account of the death of his decedent, since there was no recovery and the question does not arise here. We express no opinion on that question.

We have adverted to the question of liability of a personal representative and his surety on his official bond in order to point out the status of a claim against the estate for court costs incurred in an action brought to recover damages for the death of his decedent.

The principles governing the disposition of the actual issue in this case are discussed and settled in the case of *Thompson* v. *Mann*, 65 W. Va. 648, 64 S. E. 920. The factual basis of the decision in the case of *Thompson* v.

*Mann, supra,* will be found in the companion case of *Thompson & Lively* v. *Mann,* 53 W. Va. 432, 44 S. E. 246. In the *Thompson* cases, this court had before it a bill of complaint filed by the plaintiffs who, along with Mann, the administrator, had represented the distributees of a decedent for the recovery of damages on account of the death of the decedent. Thompson and Lively alleged that they recovered a judgment against the administrator in the sum of $250.00, for attorneys' fees for services so rendered. Mann, the administrator, had made a settlement before a commissioner and a bill was filed by plaintiffs to falsify the settlement so made.

In the first opinion, the original bill was held insufficient on the grounds that the exhibits with the bill showed that the judgment was against Mann individually and was not enforceable against Flanagan, the surety on Mann's official bond.

In the second opinion, the first point of the syllabus reads as follows: "The general rule, subject to few exceptions, is that a personal representative can not charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate, such contracts binding him only in his private capacity." It was also held in the second opinion that a judgment *de bonis testatoris* is no lien or charge upon money recovered on account of the death of a decedent by wrongful act, neglect or default.

In the body of that opinion, this language appears: " 'In causes of action wholly accruing after his decedent's death, the personal representative is in general liable individually * * * And wherever an action is brought against an executor or administrator, on promises said to have been made by him after the decedent's death, he is chargeable in his own right and not as representative;' ". Whatever action was taken by the administrator in instituting the two actions against the Baltimore and Ohio Railroad Company, and incurring court

costs thereon, occurred after Jesse P. Stringer and Josephine M. Stringer were dead. Decedents had incurred no liability for the costs on which the judgments *de bonis testatoris* were based.

In accordance with the principles enunciated in the second *Thompson* opinion, we are of the opinion that the defendant in the instant cases, as personal representative, and the property belonging to the respective estates are not liable for costs incurred by the administrator in the actions for their allegedly wrongful deaths. It is said in that opinion that this rule seems to be a wise one, since it protects the estate against waste and extravagance of a personal representative. It follows that the declarations in the instant actions fail to allege breaches of the official bonds of the administrator and upon the plaintiffs' failure to amend, the actions were properly dismissed.

The opinion in the second Thompson case indicates that where personal representative makes expenditures of the nature here considered, he is entitled to reimbursement out of the estate, but as to that question, we express no opinion.

Accordingly, the judgment of the Circuit Court of Cabell County, being without error, is affirmed.

*Affirmed.*

HAYMOND, PRESIDENT, dissenting:

I can not agree to the decision of the majority of this Court in the instant cases which, in my opinion, is not only clearly erroneous but also creates uncertainty and confusion in the administration and the settlement of estates of decedents in this jurisdiction and, by imposing personal liability for costs upon a personal representative who unsuccessfully prosecutes an action for the wrongful death of his intestate, in effect renders inoperative the provisions of Sections 5 and 6, Article 7, Chapter 55, Code, 1931, which respectively create a cause of action

for the wrongful death of a person and require such action to be brought by and in the name of the personal representative of the decedent.

As pointed out in the majority opinion, in the decision of the cases of *Daugherty, Administrator of the personal estate of Josephine M. Stringer, against The Baltimore and Ohio Railroad Company,* and *Daugherty, Administrator of the personal estate of Jesse P. Stringer, against The Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231, which were consolidated and heard together in this Court, judgments in favor of the administrator for $3600.00 and $1000.00 respectively were reversed and, under the mandate of this Court, the Circuit Court of Cabell County entered a judgment for costs against the administrator of Josephine M. Stringer for $978.65 and a judgment for costs against the administrator of Jesse P. Stringer for $766.75, each of which expressly provided that the amount of the judgment should be paid out of the funds of the estate of the decedent in the possession of the administrator. The mandate in each case, entered March 21, 1951, is identical, except the amount of the costs and the name of the decedent, and in the Josephine M. Stringer case contains this language: "It is therefore considered and ordered by the Court * * * that the plaintiff in error", the Baltimore and Ohio Railroad Company, "do recover of and from the defendant in error, Duncan W. Daugherty, Administrator of Josephine M. Stringer, Deceased, out of any funds in his possession as administrator, its costs about the prosecution of its writ of error and supersedeas in this Court in this behalf expended." In each case this Court, by the quoted language, finally and definitely adjudicated and determined the question of costs between the parties, held the estate of each decedent liable for such costs, and ordered that they be paid out of the funds of the estate in the possession of the administrator.

The general rule is that when a question has been definitely determined by this Court the decision is conclusive

on parties, privies and courts, including this Court, upon a second appeal or writ of error. *Kaufman* v. *Catzen*, 108 W. Va. 1, 150 S. E. 371; *Moore* v. *Hutchinson*, 107 W. Va. 275, 148 S. E. 78; *Roberts* v. *Lykins*, 106 W. Va. 280, 145 S. E. 440; *Keyser Canning Company* v. *Klots Throwing Company*, 98 W. Va. 487, 128 S. E. 280; *Ice* v. *Maxwell*, 70 W. Va. 186, 73 S. E. 274; *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009; *Beecher* v. *Foster*, 66 W. Va. 453, 66 S. E. 643; *Johnson* v. *Gould*, 62 W. Va. 599, 59 S. E. 611; *Wick* v. *Dawson*, 48 W. Va. 469, 37 S. E. 639; *McCoy* v. *McCoy*, 29 W. Va. 794, 2 S. E. 809; *Henry* v. *Davis*, 13 W. Va. 230. In *McCoy* v. *McCoy*, 29 W. Va. 794, 2 S. E. 809, this Court said: "If it appear by the record, that the point in controversy was necessarily decided in the first suit, whether upon demurrer or the facts in issue, it can not be again considered in any subsequent suit between any of the parties or their privies." In *Johnson* v. *Gould*, 62 W. Va. 599, 59 S. E. 611, the opinion contains this language: "No inquiry as to the soundness of the former decision herein can now be prosecuted. Right or wrong, it is the law of the case. Its binding force lies not in the rule *stare decisis*, but in the principle *res judicata*. It is a decision in the same case, forever and irrevocably determining the rights of the parties. No court now has any power or control over it other than the ascertainment of the intent and meaning of the decision, from the terms of the mandate, in entering such decrees as are necessary to carry it into effect."

As the question of the liability of the estate in each case was finally settled between the administrator and the railroad company which, though not a formal party, is the real and beneficial plaintiff in the present actions, that question, as to each of them, is *res judicata*, and this Court, instead of ignoring its former solemn holding on that point, should have applied that fundamental principle of law in these actions. By its holding in the present actions that the assets of the estate of each decedent are not liable for the costs formerly adjudicated

against the estate of such decedent this Court violates the principle *res judicata,* repudiates and reverses its decision as to costs in the cases of *Daugherty* v. *The Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231, and disregards its own solemn pronouncement in the above quoted passage from the *McCoy* case. I can not sanction or approve that strange and unwarranted result.

But the effect of the present decision is even more disturbing than the result just indicated. By holding, contrary to the decision in the *Daugherty* cases, that the estate of a decedent whose death is caused by wrongful act, neglect, or default of another person is not liable for costs in an unsuccessful action prosecuted by the administrator under Sections 5 and 6, Article 7, Chapter 55, Code, 1931, and that the administrator is personally liable for such costs, and, by clearly indicating, though not directly deciding, that the amount recovered in a successful prosecution of such action is not a part of the estate of such decedent, the Court, in effect, nullifies those sections of the statute and renders the statute practically useless and ineffective.

If an administrator of the estate of a person whose death results from the wrongful act, neglect, or default of another person, must assume liability for costs by underwriting the ultimate success of an action against the wrongdoer which the statute, by necessary implication, requires him to bring, few, indeed if any, persons acting in that capacity will bring such action. When the statutory beneficiaries of a recovery are infants, or other persons under legal disability, as frequently happens, the administrator can not be indemnified by them against his personal liability for costs if unsuccessful and in many instances in which such beneficiaries could legally provide indemnity they would be unwilling to do so. Yet the administrator who declines to bring such action, which Section 6 says "shall be brought by and in the name of the personal representative of such deceased person;"

and who permits the period of two years after the death of his decedent to expire without suing, faces the risk of an action by the beneficiaries for failing to discharge the duty imposed upon him by the statute and the added expense and inconvenience of defending such action. Under the present decision the lot of any person possessed of sufficient fortitude to act as administrator of the estate of a decedent whose death was caused by the wrongful act, neglect or default of another person is indeed an unhappy one and his position, on either horn of the dilemma, is one of doubt and uncertainty which will inevitably hamper and impair his efforts in the prompt and proper settlement of the estate of his decedent.

Though the decision of the majority finds support in the prior decisions of this Court cited in the majority opinion, the reasoning and the conclusion reached in those cases that the funds recovered or recoverable in an action by an administrator for the wrongful death of his decedent are not a part of his estate are unsound and such decisions are contrary to some decisions on that point in other jurisdictions. The decisions on which the majority principally relies are *Wilder* v. *Charleston Transit Company*, 120 W. Va. 319, 197 S. E. 814, 117 A. L. R. 948; *Fetty* v. *Carroll*, 118 W. Va. 401, 190 S. E. 683; and *Thompson and Lively* v. *Mann*, 65 W. Va. 648, 64 S. E. 920, 22 L. R. A., N. S., 1094, 131 Am. St. Rep. 987. Those cases adhere to the view, which I think is erroneous, that any fund recovered by an administrator in an action for the wrongful death of his decedent is not a part of the estate of such decedent. A question is never finally settled until it is rightly decided; and the hope that the question dealt with in the three last cited cases may eventually be correctly decided by this Court or be so resolved by legislative enactment and the existing confusion and uncertainty in the final settlement of the estates of such decedents removed is the compelling reason for this dissent.

In *Wilder* v. *Charleston Transit Company*, 120 W. Va.

319, 197 S. E. 814, 117 A. L. R. 948, this Court, in a three to two decision, held that in an action for wrongful death under Sections 5 and 6, Article 7, Chapter 55, Code, 1931, a special plea in bar that at the time of the death of the decedent he had no next of kin or beneficiaries capable of taking any recovery under the law relating to the distribution of the personal estate of an intestate presented a good defense, and that a recovery in such action in such circumstances does not escheat to the State. The majority opinion in the *Wilder* case contains this statement: "Here, the claim asserted never was owned by the decedent. It was prompted into being by virtue of decedent's death. By no stretch of the legal imagination, we think, can the recovery claimed be said to be a part of the decendent's estate.", and this quotation from the opinion in *Fetty* v. *Carroll*, 118 W. Va. 401, 190 S. E. 683: " * * * while the decedent's administrator alone may sue, his relation to any fund recovered is not that of decedent's representative, but that of trustee for the next of kin." The quoted statements are derived from a passage in the opinion in *Richards* v. *Riverside Iron Works,* 56 W. Va. 510, 49 S. E. 437, which in part is incorporated in the opinion in *Thompson and Lively* v. *Mann,* 65 W. Va. 648, 64 S. E. 920, 22 L. R. A. N. S., 1094, 131 Am. St. Rep. 987. The passage referred to is in these words: "The right of action created by the statute is founded on a new grievance, namely, causing the death, and is for the injury sustained thereby, by the widow and children, or next of kin of the deceased, for the damages must inure to their exclusive benefit. They are recovered in the name of the personal representative of the deceased, but do not become assets of the estate. The relation of the administrator to the fund when recovered, is not that of the representative of the deceased, but of a trustee for the benefit of the widow and next of kin. The action is for their exclusive benefit, and if no such person existed, it could not be maintained." The language just quoted is part of a quotation from the Indiana case of *The Jeffersonville Railroad Company* v. *Swayne's Admr.,* 26 Ind. 477.

Much of the above quotation is obviously and palpably unsound. Why is not the fund recovered by the administrator a part of the assets of the estate of the decedent; and why is not the administrator who, as such, is a trustee of the decedent's estate, the representative or the trustee of the decedent? The administrator, in his official capacity, is the only person who can bring or prosecute the suit. *Morgan* v. *Leuck*, 137 W. Va. 546, 72 S. E. 2d 825; *Perry* v. *New River and Pocahontas Consolidated Coal Company*, 74 W. Va. 122, 81 S. E. 844. He is the only person who can enforce collection of the judgment and the only person who is authorized by the statute to distribute the recovery "to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate." The persons to whom personal property left by a person dying intestate passes by the statute of descent and distribution, Section 1, Article 1 and Section 1, Article 2 of Chapter 42, Code, 1931, are the same persons who are by the statute relating to an action for wrongful death made beneficiaries of the fund. *Swope* v. *Keystone Coal and Coke Company*, 78 W. Va. 517, 89 S. E. 284, L. R. A. 1917A, 1128. When the administrator collects the amount of the recovery in an action for the wrongful death of his intestate he holds it in his fiduciary capacity the same as any other money or personal property of the deceased and he has not properly administered the estate until he has paid the fund so collected to the proper distributees as directed by the statute. The only qualification or limitation imposed by the statute upon the recovery to be distributed to the parties in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate is that "the amount so recovered shall not be subject to any debts or liabilities of the deceased."

Even if the deceased by will has made a different disposition of his personal property than that provided by the statute of descent and distribution for personal property of an intestate, the personal representative of the deceased, in his official capacity, would be required to

distribute the fund recovered in an action for wrongful death to the persons entitled to it under the statute free of any debts or liabilities of the deceased; and in so distributing the fund, unaffected by any will, his action would in no wise interfere or conflict with his administration of the estate in its entirety. The right of action for damages for the wrongful death of a deceased person, by virtue of the statute, is in his personal representative and for that reason it is, in reality, an asset of the estate of the deceased, *Goltra* v. *The People of the State of Illinois,* 53 Ill. 224; and the claim for damages in an action for the wrongful death of the intestate has been held by this Court to be property. *Richards* v. *Riverside Iron Works,* 56 W. Va. 510, 49 S. E. 437. The sound and correct view, that the fund recovered by an administrator in an action for the wrongful death of his decedent is a part of the estate, is expressed in the dissenting opinion of Judge Maxwell, in which Judge Kenna joined, in the *Wilder* case in these words: "A sum of money recovered for death by wrongful act is, we believe, in all respects, a part of decedent's estate, made so by our West Virginia statute, with the single exception that it is not liable for the decedent's debts."

In *Thompson and Lively* v. *Mann,* 65 W. Va. 648, 64 S. E. 920, 22 L. R. A., N. S., 1094, 131 Am. St. Rep. 987, the principal point in controversy involved the claim of the plaintiffs for attorney fees against the estate of a decedent. The defendant Mann was the administrator of the estate and had employed the plaintiffs to assist him in the successful prosecution of an action for the recovery of damages for the wrongful death of his intestate. This Court correctly held that the contract by which the administrator employed the plaintiffs did not charge the estate of his decedent but instead was binding on the administrator only in his private capacity and that a judgment, based on such contract, could not be enforced against the estate of the decedent or against the surety on the bond of the administrator.

Though it was not necessary to do so, in disposing of

the claim of the plaintiffs in the *Thompson* case, this Court, citing the quotation from *The Jeffersonville Railroad Company* v. *Swayne's Admr.*, 26 Ind. 477, incorporated in the opinion in *Richards* v. *Riverside Iron Works*, 56 W. Va. 510, 49 S. E. 437, held that money recovered by an administrator in an action for the wrongful death of his decedent does not constitute general assets of the estate of the decedent and is not liable for his debts and that such money belongs to the persons who under the statute are entitled to receive it. As the contract considered in the *Thompson* case between the administrator and the plaintiffs, by which he employed them as attorneys to assist in the prosecution of the action to recover damages for the wrongful death of his decedent, was a new transaction which did not originate until after the death of the decedent, the administrator was without authority, in the absence of a will conferring such power or consent of the distributees and creditors of the decedent, to enter into the contract in his official capacity and, of course, it did not bind him in his official capacity or the estate of his decedent but instead was binding on him only in his private capacity. See *Bank of Gauley* v. *Osenton*, 92 W. Va. 1, 114 S. E. 435; *Thurmond* v. *Guyan Valley Coal Company*, 85 W. Va. 501, 102 S. E. 221; *Wick* v. *Dawson*, 48 W. Va. 469, 37 S. E. 639.

The liability here asserted against the administrator in his official capacity for the costs in the two actions brought and unsuccessfully prosecuted by him against the railroad company, however, does not arise from or depend upon any contract made or attempted to be made by him but, on the contrary, was imposed upon him in his official capacity without his assent and against his will by the solemn mandate of this Court in each of those actions. Consequently the rule of the *Thompson* case and the other cited cases, under which the majority holds the administrator personally liable for costs which were previously adjudicated by this Court as a liability of the estate of his decedent, has no present application.

Though I concede that by the general rule, supported by the weight of authority, funds recovered by a personal representative for the wrongful death of his decedent are not part of his estate, 16 Am. Jur., Death, Sections 249 and 266, it has been held, as I think correctly, that such funds are assets of the estate of the decedent. *Patterson* v. *Tate,* 141 Tenn. 607, 213 S. W. 981; *Goltra* v. *The People of the State of Illinois,* 53 Ill. 224.

In the *Goltra* case the administratrix of her deceased husband was paid compensation for his wrongful death. She refused to account to the children of the decedent for any portion of the money collected and suit was instituted in their behalf to recover their share against the administratrix and the sureties on her bond. The defendants denied liability on the ground that the money was not assets in the hands of the administratrix. In rejecting that ground of defense the Supreme Court of Illinois said:

"This position is wholly untenable. It is true, the creditors of the estate are entitled to no portion of this fund, and it is recoverable only for the benefit of the widow and next of kin; but when the sum is recovered by suit, or voluntarily paid under the statute, as in the present case, it is as much assets in the hands of the administrator, as if recovered for the benefit of creditors. The statute provides that the personal representative of the deceased, to-wit, the executor or administrator, shall bring the suit, and how he shall distribute the amount recovered. When he has collected it, he holds it in his fiduciary capacity, as much as any other monies of the estate, and he has not truly administered the estate, until he has paid over the fund to the proper distributees. His sureties undertake for his performance of this part of the duties of his office, as much as for any other."

In the *Patterson* case the Supreme Court of Tennessee held that the fund received by the administrator of children killed by a railroad company in settlement of claims for their wrongful death constituted part of their estate

and that the sureties on the bond of the administrator were liable for its improper disbursement. In the opinion the Court used this language:

"By the third assignment of error it is insisted that the court of civil appeals erred in not holding that the judgment against the administrator and complainants, as his sureties, was void, because the fund received by said administrator from the railroad company in settlement of claims against it for the wrongful killing of the intestates of said administrator did not constitute any part of the estates of said intestates, and the sureties of the administrator could not, therefore, be held responsible for the same.

"We think this assignment of error is wholly without merit."

The majority opinion cites the *Goltra* and *Patterson* cases and also cites the cases of *Watkins* v. *Purnell,* 187 Ark. 837, 62 S. W. 2d 20; *United States Fidelity and Guaranty Company* v. *Decker,* 122 Ohio St. 285, 171 N. E. 333, 68 A. L. R. 1538; *Aetna Casualty and Surety Company* v. *Young,* 107 Okla. 151, 231 P. 261; *Boyd* v. *Richie,* 159 S. C. 55, 155 S. E. 844; and *Vukmirovich* v. *Nickolich,* 123 Minn. 165, 143 N. W. 255, as authority from other jurisdictions to sustain a view contrary to that reached in the *Thompson* case and adhered to by the majority in the present actions. In the cases just cited, nothwithstanding statements in some of the opinions to the effect that the fund recovered by a personal representative in an action for damages for the wrongful death of his decedent is not part of the assets of his estate, it was uniformly held that the sureties on the bond of the personal representative were liable for the improper administration of the amount so received by the personal representative.

The utter fallacy in the statement in the opinions in the *Wilder, Fetty, Thompson* and *Richards* cases that the relation of the administrator to the fund when recovered, in an action for wrongful death is not that of the repre-

sentative of the deceased, but is that of a trustee for the beneficiaries of the fund, is exposed and demonstrated and the force of the statement is completely dispelled by these expressions in the opinion in *Aetna Casualty and Surety Company* v. *Young,* 107 Okla. 151, 231 P. 261, which are quoted in the opinion in *Boyd* v. *Richie,* 159 S. C. 55, 155 S. E. 844:

"The statutes provide that this suit to recover this money shall be maintained by the personal representative, an officer of the Court, and in this case the personal representative is the administratrix of the estate of Al Young, deceased. It was the statutory duty of the administratrix in her official capacity as administratrix, and not otherwise, to maintain this action. The right and duty to maintain the action includes the right and duty to collect and receive into her own hands, for distribution, the moneys which the action is brought to recover. Having been appointed such administratrix, no officer or person other than she could do so, and she could do so only in her official capacity. Now the surety company on the bond says to us that she must distribute the fund, not in her official capacity, as administratrix, but as a statutory trustee. Why, the only statutory trustee we have here is the administratrix and she is an officer of the Court. If it be otherwise, then such statutory trustee of this fund is not an officer but an unsworn, unbonded private person who played the part of an officer of the Court in exercising the power to collect and *ipso facto* becomes a private person to distribute funds in his official hands. Was it the intention of the lawmakers to grant this power to collect to one, as an official, and then with the money in her hands make no requirement that as an official she distribute the same? Holding the money as an official, does she distribute same as a private person? No, for in that same capacity in which she received, so in that capacity must she distribute. Then she disburses as an officer, and nowhere in relation to these matters was but one office created by law, and that office was labelled administratrix, the office by authority of

which alone she, and none other, could collect. The duties she owed in disbursing this fund were the duties consigned to her by law; they were official because as a private person she had no right to collect the money. These duties then are a part of the statutory obligation of her trust. * * *.

"If our theory of the liability of the surety is erroneous, why did the lawmakers enact into Section 824 the provision that this suit should be maintained only by the administrator if one were appointed? Why were they not content to let the widow or the next of kin themselves maintain this action in their own names? * * *. Boldly stands out the only plausible reason, to wit, that they desired to give the heirs the protection of a bonded officer."

Under the law as enunciated in the *Goltra* and *Patterson* cases and as I consider it to be, the anomaly of the duality of a personal representative as a fiduciary in his official capacity to collect compensation for the wrongful death of his decedent and as a private unsworn unbonded person in its distribution would not be recognized or permitted to exist and the personal liability for costs, imposed upon a personal representative who, in the performance of his statutory duty to bring an action for the wrongful death of his decedent, fails to obtain a recovery would be eradicated and removed; the recovery in a successful action by a personal representative of damages for the wrongful death of his decedent would be assets of his personal estate to be administered by the personal representative as the other personal property of the estate is administered by him except that such recovery, administered by him in his official capacity, would be distributed to the persons designated in, and free from debts and liabilities of the decedent as provided by, the statute relating to an action for wrongful death; and, in the event the prosecution of such action by the personal representative should be unsuccessful, the personal estate of the decedent, rather than the personal representative

in his private capacity, would be liable for the costs of such action. To the anticipated argument that, in that state of the law, an estate of a decedent consisting of only a small amount of personal property would be consumed by the costs of an unsuccessful action for his wrongful death to the prejudice of legatees, distributees and creditors, my reply is that if the decedent, instead of experiencing death as the result of the wrongful act, neglect or default of the tort-feasor, had sustained only nonfatal personal injuries and had instituted and prosecuted unsuccessfully an action for damages for such injuries his same small amount of personal property would be legally subject to liability for the payment of the costs of such action with like prejudice to himself, his dependents, and his creditors. In such instance the risk to the personal property of the estate of liability for costs is no greater or different than that to the personal property of a plaintiff who escapes death but instead sustains injuries at the hands of a wrongdoer. Under the law, as stated above and as I believe it to be, the palpable wrong and injustice which results from the denial of the claim of the railroad company in these actions for costs, previously adjudicated in its favor as the prevailing party justly entitled to a recovery for costs against the administrator of each decedent in the two cases of *Daugherty* v. *The Baltimore and Ohio Railroad Company*, 135 W. Va. 688, 64 S. E. 2d 231, would be avoided and would not be permitted to occur.

The principal purpose of the general rule that the contract of an administrator involving a transaction which originates after the death of his intestate is not binding upon his estate is to protect the estate against liability created in that manner. As the liability for costs adjudicated in an unsuccessful action by an administrator for the wrongful death of his decedent does not result from or depend upon any contract by the administrator but is imposed by court order entered without his assent and against his will, there is no sufficient reason for affording immunity from such costs to the estate

of a person whose death results from the wrongful act, neglect or default of another person when such immunity is denied the same person if, instead of meeting death, he sustains personal injuries caused by the wrongful or negligent act or omission of another person and, while living, prosecutes an unsuccessful action against the wrongdoer for the recovery of damages for such injury. In my judgment the same, not a different, rule should apply in each instance.

The facts in the present actions show that the administrator of each estate, when he brought each action for the recovery of damages for the wrongful death of his intestate, had assets of those estates in an amount in excess of $5,800.00; that during the pendency of a writ of error and supersedeas in this Court to the judgment in favor of the administrator in each case, and with full knowledge upon his part that in his official capacity as such administrator he was subject to liability for costs in the event the judgment in each case was reversed by this Court, he completely distributed the personal assets of each estate; and that, at the time of the reversal of each judgment by this Court and its adjudication of costs against him in his official capacity in each case, by failing to retain in his possession sufficient funds of each estate to satisfy the adjudication of this Court for costs, he had no funds in his possession as administrator of either estate for that purpose. In that manner and by such conduct he has rendered futile and of no effect the solemn adjudication of this Court in favor of the railroad company as the prevailing party for the costs in each action; and, by the present decision of the majority, any recovery by that company of the costs from the administrator in his official capacity and the surety on his bond has been destroyed.

In the factual situation outlined above, as disclosed by the material allegations of the declaration in each of these actions, which on demurrer are regarded as true, I would hold that the administrator of each estate, by

failing to retain sufficient assets of the estate in his possession as such to satisfy any costs adjudicated against him, and by completely disbursing the assets of each estate with full knowledge of his contingent liability for such costs, has violated the condition of his bond, and that he and his surety on such bond are liable for the costs adjudicated against him by this Court in each of the actions instituted by him for the wrongful death of his intestate. In consequence, I dissent from the decision of the majority and, for the reasons set forth in this opinion, I would reverse the judgment of the circuit court and award the plaintiff a new trial in each of the present actions.